UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re                                                    Chapter 12
McMahon Family Limited Partnership,                      Case No. 12-37314-svk
                        Debtor.

**DECISION AND ORDER ON CONFIRMATION OF CHAPTER 12 PLAN**

McMahon Family Limited Partnership (the "Debtor") filed a Chapter 12 petition on December 10, 2012. Chapter 12 is limited to family farmers, and the Debtor operates a tree farm on two parcels of real property in northern Wisconsin. The Court uses the term "operates" loosely: the Debtor's statement of financial affairs reveals that the Debtor has not received any income from the operation of the business in the last two years.

The Debtor filed a modified Chapter 12 plan on May 23, 2013. The Chapter 12 Trustee objected that the plan does not meet the "best interest of creditors" test of 11 U.S.C. § 1225(a)(4). Under that test, the plan must provide each unsecured creditor with a distribution of not less than the amount that the creditor would receive in a liquidation of the Debtor's bankruptcy estate under Chapter 7. First Bank Financial Centre (the "Bank") a creditor with a secured and unsecured claim, also objected to confirmation of the plan contending (1) the Debtor does not qualify for Chapter 12 relief; (2) unsecured creditors would be paid in full in a Chapter 7 liquidation; and (3) the Debtor's proposed treatment of the Bank's secured claim is commercially unreasonable. The Court considered the objections at confirmation hearings held on April 10, 2013 and June 18, 2013.

The Debtor's eligibility for relief as a family farmer should be considered first. If the Debtor were an individual, the Debtor would not qualify for Chapter 12. Under Bankruptcy

Code § 101(18)(A), individuals must receive more than 50% of their gross income from the farming operation in order to qualify, and Christopher McMahon, the principal of the Debtor, derives his income from his position as a medical equipment salesman. But the definition is different for corporations and partnerships like the Debtor. *See In re Cross Timbers Ranch, Inc.*, 151 B.R. 923 (Bankr. W.D. Mo. 1993) (no income requirement for family farmer corporations). For entities, Bankruptcy Code § 101(18)(B) defines a family farmer as: "[C]orporation or partnership in which more than 50 percent of the outstanding stock or equity is held by one family, or by one family and the relatives of the members of such family, and such family or such relatives conduct the farming operation." A corporation is the general partner of the Debtor, and that corporation is owned by Mr. McMahon and his wife. Although conceding that the McMahon family owns all of the equity interests in the Debtor, the Bank disputes that the family is conducting a farming operation. The issue poses two sub-questions: (1) is a tree farm a farming operation; and (2) is the McMahon family conducting it.

According to the Bankruptcy Code, "Farming operation" includes farming, tillage of the soil, dairy farming, ranching, production or raising of crops, poultry, or livestock, and production of poultry or livestock products in an unmanufactured state." 11 U.S.C. § 101(21). Two cases have touched on whether a tree farm qualifies as a farming operation and reached the opposite conclusion. In *In re Sugar Pine Ranch*, 100 B.R. 28, 34 (Bankr. D. Or. 1989), the court adopted an expansive view and held that "[T]he debtor's operations, including the harvesting of timber on a sustained yield basis, constitutes an integrated farming operation." In *Sugar Pine Ranch*, the issue before the court was whether the debtor's income from the timber harvest was farm income; the court did not define a tree farm as a farming operation. Moreover, the tree harvesting was part of an "integrated farming operation," not simply a tree farm. *See In re*

*Alderson*, 114 B.R. 672, 680 (Bankr. D.S.D. 1990) ("Income from timber harvesting is includable in farm income when such is done on a sustained yield basis and is part of an integrated farming operation. *In re Sugar Pine Ranch*, 100 B.R. 28 (Bankr. D. Or. 1989). Here, the harvesting of timber is neither on a sustained yield basis nor a part of an integrated farming operation. Rather, it was a one time removal of timber from the ranch.") In *In re Miller*, 122 B.R. 360, 364-65 (Bankr. N.D. Iowa 1990), the court criticized *Sugar Pine Ranch's* broad reading of the Code:

> The finding of the *Sugar Pine Ranch* court that logging is a farming operation is a very expansive view of farming activity. In this case, the Debtors own the land upon which the trees they harvest are grown. However, to take the Debtors' argument to its logical conclusion, any person with a chain saw and truck for hauling logs and who owns or rents any timberland would qualify as a farmer. The Court finds such an expansive view of farming to be troubling.

The *Miller* court went on to find that even if a tree farm qualified as a farming operation, the debtor also processed the trees at a sawmill, disqualifying the debtor's operation under the definition in § 101(21). Neither *Sugar Pine Ranch* nor *Miller* is exactly like this case. In *Sugar Pine Ranch*, the debtor raised animals, and therefore conducted some traditional farming activities in addition to the tree harvesting, and in *Miller*, the debtor conducted activities that definitely did not fit within the definition of farming operation, since the trees were processed and sold at the debtor's sawmill. Here, the tree farm operation is the sole farming activity, and the Debtor claims it qualifies as a family farmer.

In support of confirmation of the plan, at the June 18, 2013 hearing, Mr. McMahon testified that he purchased 160 acres in Sawyer County in 1994 and 200 acres in Taylor County in 1999. Mr. McMahon transferred both properties to the Debtor in 2003. The Taylor County property contains a 40-acre parcel improved by a farmhouse.[1] Mr. McMahon stated that he

---

[1] The Bank has a mortgage on this 40-acre parcel. The balance of the Bank's claim is unsecured.

3

purchased the property to make it into a productive tree farm operation over a period of years so that it would be sustainable by the time he retired. He testified that he and his family immediately began timber operations by purchasing and planting seedlings. He identified pictures from the year 2000 showing the family planting seedlings on the Taylor County property and from 2003 showing some growth of the trees. He also testified that some seedlings were hand-planted on the Sawyer County property in the 2002 - 2003 timeframe; he indicated that, given the nature of the Sawyer County property, the family could not use machinery to plant the seedlings. Mr. McMahon offered no pictures or other evidence to corroborate his testimony that he had planted seedlings on the Sawyer County property, and at the April 10, 2013 hearing, Mr. McMahon testified unequivocally that he and his family had not planted any seedlings at the Sawyer County property.[2] This conflicting testimony is troubling.

Mr. McMahon's testimony about the number of seedlings he planted also was contradictory. In June, he testified that since the year 2000, he and his family have planted an average of 3,000 seedlings per year. One year, they put in 6,000 seedlings. When asked how many trees he had planted since they started, Mr. McMahon testified "I am guessing maybe 120,000." In April, he testified a total of 90,000 seedlings were planted. The math does not work, and the pictures and invoices submitted as evidence did not show anywhere near this magnitude of tree planting.

None of the seedlings planted by the McMahon family have been harvested, as the seedlings take 20 to 25 years to grow to merchantable size, and Mr. McMahon admitted that the trees will not be ready to harvest for at least another ten years. However, there are existing hardwoods on the Debtor's property that could be cut down. In fact, the proceeds from this

---

[2] He went into detail about how the Sawyer County property needed to be clear cut before any seedlings could be planted.

4

operation (supplemented by Mr. McMahon's off-farm income) will fund the plan. In April, Mr. McMahon testified that he had met with a series of loggers for the hardwoods, selected one and anticipated a $42,000 net profit in 2013 to fund the plan. When the Bank pointed out that the property had never been logged in the over dozen years since he owned it, Mr. McMahon testified that various potential loggers proved to be unreliable and that the Debtor could not afford the $4,000 to $5,000 cost of the required forestry plan. At the April 10, 2013 hearing, Mr. McMahon testified that he had lined up a "solid" logger, pre-approved by the forester, ready to do the work. In April, he testified that the harvest will start "hopefully immediately. This is a good time to do it right now before it gets too soft. . . . We're anticipating having everything done by mid-June at the latest."

At the June hearing, the story had changed. The "solid" logger proved unreliable, and the Debtor had a new "gentleman," Darrin Duncan, who showed some interest and was working on a bid to log the Taylor County property. As of the June hearing, the Debtor had not entered into a contract with Mr. Duncan. Mr. McMahon did not explain how Mr. Duncan would cope with the "too soft" conditions that were described at the April hearing. In short, the Debtor's evidence that the property will be operated as a tree farm in 2013 was highly speculative and not credible.[3]

The Debtor's plan proposes to pay at least $28,956.84 in the first year out of the projected income of $42,000. Any shortfall will be made up by Mr. McMahon's off-farm income. The evidence did not support these projections. After testifying about the "solid" logger he had lined up in April, in June, Mr. McMahon admitted that he had not returned his telephone calls and now a new logger was in the picture. Yet there was no written contract or bid available to corroborate that the new logger was more reliable than the last one. And no explanation was forthcoming

---

[3] The Court was unimpressed with the Debtor's testimony that he recently sold 18 potted trees. This de minimis activity does not constitute a family farm operation in the face of the Bank's objection.

5

about why in April the process needed to be started "immediately" to be "completed by mid-June," but on June 18, Mr. McMahon was still waiting for a written bid that he hoped to have within a week. Although Mr. McMahon's off-farm income is impressive – he allegedly nets over $21,000 per month – there was no reason given why he did not use this income to pay the $4,000 necessary to institute the managed forestry plan. When the Court suggested that Mr. McMahon was using the Debtor's losses as a tax write-off contrary to the legislative history of the purpose of Chapter 12, the Debtor's attorney scoffed and suggested that Mr. McMahon might need his own Chapter 11 case. In short, even assuming the Debtor's operation (consisting of planting the tree seedlings and waiting for them to mature) qualifies as a farming operation, the Debtor did not prove that it can make the proposed payments under the plan as required by § 1225(a)(6).

    The Court concludes that the Debtor's plan should not be confirmed. The Debtor's tree farm operation is not part of an integrated farming operation as illustrated by *Sugar Pine Ranch*. The Debtor owns no farm assets (other than the real estate on which the trees are growing), and the Debtor has never made income from the tree farm. The Debtor's evidence that, after years of inactivity, it will suddenly generate over $40,000 from cutting the hardwood trees is thin at best. Between April and June, the critical time to start the logging process, the Debtor's "solid" logger disappeared. At the June 18, 2013 hearing, a new logger had entered the picture. But the Debtor could not produce any written evidence of the new logger's viability and failed to explain why Mr. McMahon had not previously used his off-farm income to purchase a forestry plan (a primary component of a tree farm operation). Under these circumstances, if the Debtor qualifies as a family farmer (and the Court considers this doubtful), the Debtor failed to prove that it can make the payments called for under its plan.

According to the Trustee and the Bank, the Debtor's plan fails to provide the minimum payments necessary to the unsecured creditors. The Court's review of the appraisal testimony confirms that the Trustee's and Bank's arguments are well-founded. The Debtor's appraiser's deductions for the liquidation value of the property are too high. Since the present plan is not feasible, there is no way the Debtor could perform a plan with increased payments to unsecured creditors.

IT IS THEREFORE ORDERED: confirmation of the Debtor's plan is denied.

IT IS FURTHER ORDERED: if the Debtor fails to file a well-supported motion for additional time to file a confirmable plan within 14 days, this case will be dismissed under 11 U.S.C. § 1208(c)(5).

Dated: July 10, 2013

By the Court:

*Susan Kelley*

Susan V. Kelley
U.S. Bankruptcy Judge